**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

DAVID ARNOLD GRAY

Plaintiff

vs

MIAMI-DADE COUNTY,
**a political subdivision of**
**the State of Florida;**

CHRISTINA SALINAS-COTTER,
**in her individual capacity;**

NATHAN KOGON,
**in his individual capacity;**

Defendants.

_____/

JURY TRIAL DEMANDED

CASE NO.:

FILED BY _____ D.C.

DEC 0 1 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## COMPLAINT

**COMES NOW,** *Pro Se Plaintiff* David Arnold Gray ("Plaintiff"), and sues

Defendants Miami-Dade County, Christina Salinas-Cotter, and Nathan Kogon, and states

as follow:

### I.   INTRODUCTION

1.    This is an action for damages, including non-economic compensatory

damages exceeding $1,000,000, and for injunctive relief arising from Defendants'

violation of Plaintiff's procedural due process rights under the Fourteenth Amendment.

2.     This is also an action for damages arising from Defendants' unlawful conduct under color of law, including their discrimination and retaliation interference with Plaintiff's protected rights and privileges guaranteed by state law.

## II.     JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution and the laws of the United States.

4.     Plaintiff brings this action under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of his property interest without procedural due process, in violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

5.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because all Defendants reside in the State of Florida.

## III.     PARTIES

6.     Plaintiff David A. Gray is a middle-aged Black male, a citizen of the United States, and a resident and registered voter in the State of Florida.

7.     Defendant Miami-Dade County is a political subdivision of the State of Florida and is sued in its capacity as Plaintiff's employer located at 111 NW 1st Street Suit 17-202 Miami, FL 33136.

8.     Defendant Christina Salinas-Cotter is a middle-aged White female and the Assistant Director of Miami-Dade County's Department of Housing and Community Development. She is sued in her individual capacity for actions taken under color of state law and can be located at 701 NW 1st court Miami, FL 33136.

9.      Defendant Nathan Kogon is a middle-aged White male and the Director of Miami-Dade County's Department of Housing and Community Development. He is sued in his individual capacity for actions taken under color of state law and can be located at 701 NW 1st court Miami, FL 33136.

### IV.    FACTS RELEVANT TO UNLAWFUL EMPLOYMENT PRACTICES

10.     HCD maintains the practice of assigning window workstations to senior-, managerial-, and upper-level employees upon hire or promotion.

11.     Within HCD, window workstations function as a customary privilege of employment granted to employees in qualified classifications.

12.     Plaintiff was promoted to the senior-level Business Architect position on October 3, 2024.

13.     Immediately after his promotion, Plaintiff requested reassignment to a visibly vacant window workstation.

14.     Plaintiff made this request to Defendant Salinas-Cotter, the Assistant Director responsible for workstation assignments.

15.     Defendant Salinas-Cotter denied Plaintiff's request for the vacant window workstation.

16.     Defendant Salinas-Cotter provided no justification or explanation for the denial.

17.     Shortly   thereafter,   Defendant   Salinas-Cotter   assigned   window workstations to three white male employees upon their promotions or hiring into qualified classifications.

18.     On December 16, 2024, Defendant Salinas-Cotter authorized Oscar Barco, a white male employee, to move into a window workstation.

19.     This authorization occurred before HR approved Barco's promotion to a qualified classification.

20.     Defendant Salinas-Cotter denied the window-workstation privilege to Plaintiff, a Black male promoted to a qualified classification.

21.     This privilege is ongoing and routinely granted to similarly situated white male employees.

22.     Defendant Salinas-Cotter deprived Plaintiff of the right and privilege to an available window workstation.

23.     This action was based on Plaintiff's race and sex.

24.     Defendant Salinas-Cotter engaged in disparate treatment prohibited by F.S. § 760.10.

## V.     FACTS RELEVANT TO PETITION CLAUSE VIOLATION

25.     On February 3, 2025, Plaintiff received an email from Commissioner Regalado.

26.     The email stated that three Kendall Learning Academy (KLA) interns would be assigned to Plaintiff's Data and Reporting Unit for twelve weeks.

27.     The email stated the interns were expected to start on February 10, 2025.

28.     The email instructed Plaintiff to process the interns for introductions with their job coaches.

29.    Plaintiff attempted to secure available workstations for the KLA interns by making a request to Defendant Salinas-Cotter.

30.    Defendant Salinas-Cotter is the Assistant Director responsible for workstation assignments.

31.    Defendant Salinas-Cotter denied Plaintiff's request for the workstations.

32.    Defendant Salinas-Cotter claimed the internship program lacked Mayoral authorization.

33.    On February 10, 2025, two KLA interns reported to Plaintiff ready for duty.

34.    Plaintiff was unable to secure workstations for the interns.

35.    Plaintiff and the interns worked in crowded conditions.

36.    They shared a single 5'×5' cubicle.

37.    After enduring these conditions for several weeks, Plaintiff emailed a written petition for redress to Defendant Salinas-Cotter.

38.    The petition raised concerns regarding her alleged disparate treatment and abuse of authority.

39.    The petition alleged violations of law or County Implementing Order IO 7-45 ("IO 7-45").

40.    Plaintiff's email constituted a written petition to the government that disclosed alleged misconduct and violations of law or policy by a government actor.

41.    In response to Plaintiff's petition, Defendant Salinas-Cotter sent an email threatening disciplinary action.

42.     In her email, Defendant Salinas-Cotter stated: "First and foremost, I must address my right, under the same County regulations you cited, to a workplace free from unlawful harassment."

43.     She continued: "Your false claims and allegations constitute harassment, and I will take appropriate steps to report this behavior to the relevant authorities under all applicable laws and policies."

44.     Defendant Salinas-Cotter's response created a chilling effect on Plaintiff's wife. *(See Exhibit A).*

45.     Plaintiff's wife is an Interim Division Director within the same department.

46.     Plaintiff's wife insisted that he stop engaging in protected activity.

47.     This insistence was out of fear that retaliation would be taken against her.

48.     Defendant Salinas-Cotter discouraged a reasonable employee (Plaintiff's wife) from engaging in protected activity.

49.     Defendant Salinas-Cotter engaged in retaliatory actions in response to Plaintiff's petition.

50.     In direct response to Plaintiff's petition, Defendant Salinas-Cotter violated the petition clause of the First Amendment.

## VI.    FACTS RELEVANT TO PROTECTED DISCLOSURE OF INFORMATION

51.     On February 27, 2025, a written, signed, and notarized complaint was submitted by Plaintiff to the Miami-Dade County Commission on Ethics and Public Trust ("COE").

52.     Plaintiff disclosed information regarding actual or suspected violations of anti-discrimination laws based on race and sex.

53.     Plaintiff also disclosed information regarding anti-retaliation laws protecting the disclosure of information and deprivations of rights under color of state law.

54.     Plaintiff disclosed this information because a reasonable belief existed that Defendant Salinas-Cotter was engaging in an abuse of authority.

55.     Plaintiff reasonably believed this created a substantial and specific danger to his household, given his status as an employee and citizen of Miami-Dade County.

56.     On May 8, 2025, Loressa Felix, General Counsel for the COE, notified all parties of record that the COE staff would recommend dismissal of Plaintiff's complaint.

57.     This dismissal was scheduled for the May 14, 2025, meeting.

58.     Plaintiff objected to the recommended dismissal by email.

59.     In the email, Plaintiff stated: "My complaint was not submitted lightly — it raised concerns rooted in fact, procedure, and professional conduct that I believe merit more than administrative closure."

60.     Plaintiff continued: "Dismissing this matter without a full, transparent review sends the wrong message to County employees and the public alike: that ethical standards may be applied selectively, or not at all, depending on one's position or political influence."

61.     The COE issued a Final Order dismissing the complaint.

62.     The dismissal was solely for lack of jurisdiction.

63.     The COE stated that the allegations involved personnel actions and discrimination matters outside the scope of the Ethics Ordinance.

64.     The COE dismissal was procedural in nature.

65.     The COE dismissal did not address, evaluate, or refute the merits of Plaintiff's factual allegations.

## VII.    FACTS RELEVANT TO RETALIATORY REASSIGNMENT

66.     Within three business days of the General Counsel's email recommending dismissal, Defendants Kogon and Salinas-Cotter scheduled a meeting with Plaintiff.

67.     The meeting took place in the Director's Office on May 13, 2025, at 8:45 a.m.

68.     The meeting lasted less than five minutes.

69.     During this meeting, Defendant Kogon, as the HCD Director, informed Plaintiff that he would now report directly to Defendant Salinas-Cotter.

70.     On May 14, 2025, Plaintiff sent an email to Defendant Kogon titled "Formal Disclosure Regarding Ethics Complaint and Reassignment".

71.     In the email, Plaintiff stated: "As you may be aware, I filed an ethics complaint against Ms. Salinas-Cotter that is currently pending before the Ethics Commission, with a hearing scheduled for today May 14, 2025."

72.     Plaintiff continued: "This email memorandum addresses whether your reassignment constitutes a violation of state and federal retaliation laws."

73.     Plaintiff continued: "Based on the facts presented and the legal standards established under Title VII of the Civil Rights Act of 1964 and Florida's Whistleblower

Act (F.S. §112.3187), the answer is — this reassignment raises serious concerns and may constitute a violation of anti-retaliation protections."

74.     Defendant Kogon stated in his reply on May 15, 2025, that his decision to place Plaintiff's reporting structure under Defendant Salinas-Cotter was made objectively and independently.

75.     Defendant Kogon claimed the purpose was to consolidate business architecture, data reporting, and metrics within a single framework.

76.     The business architecture, data reporting, and metrics functions were already consolidated within a single framework under the Director's Office as the Data and Reporting Unit. *(See Exhibit B).*

77.     Plaintiff holds a Black Belt Certification from the Council for Six Sigma Certification and has more than 15 years of advanced technical engineering experience.

78.     He brings sophisticated problem-solving methodologies and Silicon Valley–level innovation to the Business Architect role.

79.     By contrast, Defendant Salinas-Cotter has more than 20 years of administrative leadership experience.

80.     Her advanced technical end-user expertise may be equivalent to a power user.

81.     The Business Architect position description states the role is accountable to the Deputy Director and Department Director.

82.     The position description states the Business Architect is positioned within the Director's Office and leads the Data and Reporting Unit.

83. The position description states the Business Architect works collaboratively with business and technical subject-matter experts throughout County departments and U.S. HUD.

84. Defendant Kogon's reassignment caused an adverse dispute with the official terms, conditions, and privileges of Plaintiff's employment.

85. Defendant Kogon aggravated and intensified the chilling effect previously imposed by Defendant Salinas-Cotter on Plaintiff's wife.

86. Out of fear of retaliation against her, Plaintiff's wife urged him to resign rather than file this complaint.

87. Defendant Kogon engaged in retaliatory actions that adversely affected the terms, conditions, and privileges of Plaintiff's employment.

88. These actions were taken in direct response to Plaintiff's reported concerns to the COE.

## IIX.   FACTS RELEVANT TO RETALIATORY HOSTILE ENVIRONMENT

89. Immediately after Plaintiff's COE complaint was dismissed, Defendant Salinas-Cotter began publicly undermining Plaintiff's expertise, credibility, and authority as the department's Business Architect.

90. In late May 2025, during Plaintiff's first two-on-one meeting with Defendant Salinas-Cotter following the retaliatory reassignment, she stripped Plaintiff of the autonomy and professional liberty traditionally afforded to the Business Architect.

91. During this meeting, Defendant Salinas-Cotter informed Plaintiff that he could no longer attend leadership meetings without her approval.

92.     Defendant Salinas-Cotter further restricted Plaintiff from collaborating directly with internal divisions unless she pre-authorized the interaction.

93.     Defendant Salinas-Cotter also prohibited Plaintiff from engaging with other County departments, including CITD, without her express permission.

94.     These restrictions contradicted the Business Architect's assigned enterprise-level responsibilities and diminished Plaintiff's authority and professional standing.

95.     These actions signaled to staff and partner agencies that Plaintiff's role had been intentionally downgraded following his protected disclosures.

96.     On August 21, 2025, during a CITD Teams meeting attended by senior County technical leadership, Defendant Salinas-Cotter escalated her campaign by publicly attacking Plaintiff's professional competence.

97.     During this meeting, Defendant Salinas-Cotter declared that only she alone in HCD could "marry the business process with the technical needs."

98.     This statement directly contradicted the core function of the Business Architect position.

99.     Her statement falsely conveyed to CITD leadership that the Business Architect role — and Plaintiff specifically — lacked the technical and strategic capacity required for enterprise-level systems work.

100.     This public dismissal caused immediate professional embarrassment and undermined Plaintiff in front of the stakeholders he was required to collaborate with.

101.   In response to her statement, CITD Assistant Director José Lopez asked, "What about the Business Architect?" highlighting the contradiction between her claims and Plaintiff's official duties.

102.   Defendant Salinas-Cotter replied, "I am getting a Business Initiative Manager—I never had one of them before," signaling to CITD that Plaintiff would be replaced or sidelined.

103.   This statement, made in a public forum, communicated to partner agencies that Plaintiff was no longer trusted or empowered to perform the duties associated with his classification.

104.   In mid-October 2025, Defendant Salinas-Cotter hired a white male, Amit Sharma, into the Business Initiative Manager role.

105.   Defendant Salinas-Cotter assigned Mr. Sharma duties that overlapped Plaintiff's core Business Architect responsibilities.

106.   Defendant Salinas-Cotter issued a department-wide email presenting Mr. Sharma as the department's primary liaison to CITD.

107.   This action directly usurped Plaintiff's designated enterprise-coordination responsibilities.

108.   Defendant Salinas-Cotter then scheduled Mr. Sharma for a formal meet-and-greet with CITD leadership to present him as the new technical point of contact.

109.   Plaintiff—a senior-level Black male in the Business Architect role—was deliberately excluded from the meet-and-greet.

110. Plaintiff was not introduced to CITD in any equivalent capacity, despite his classification requiring enterprise-level collaboration.

111. This exclusion communicated to CITD and internal staff that Plaintiff had been professionally diminished, demoted, or replaced.

112. Defendant Salinas-Cotter's public statements, restrictions, and exclusionary actions were deliberate acts intended to embarrass Plaintiff and undermine his authority.

113. These actions were designed to damage Plaintiff's credibility following his protected disclosures.

114. Collectively, these acts created a retaliatory hostile work environment by subjecting Plaintiff to repeated public humiliation, professional marginalization, and loss of autonomy.

115. These conditions materially altered the terms, conditions, and privileges of Plaintiff's employment.

## IX.   CAUSE OF ACTION
### COUNT I. UNLAWFUL EMPLOYMENT PRACTICES
*Under 42 U.S.C. § 1983*

116. Plaintiff hereby incorporates by reference paragraphs 1 through 8 and paragraphs 10 through 24, *supra*, as if fully stated herein.

117. This claim is brought against Defendant Miami-Dade County and Defendant Christina Salinas-Cotter (collectively, "Defendants").

118. Defendants' misuse of public position, in violation of Florida Statute § 112.313(6), secured a special privilege, benefit, or exemption for Defendants to enable

unlawful employment practices prohibited under Florida Statute § 760.10 — without notice or hearing — in violation of the Due Process Clause of the Fourteenth Amendment.

119. Defendants, acting under color of state law, engaged in misuse of public position with the intent to commit unlawful employment practices that deprived Plaintiff of rights and privileges guaranteed by the Constitution.

120. Defendants acted under color of state law by using their public positions to control workstation assignments in a racially discriminatory manner and by denying Plaintiff a customary benefit because of his race and sex without a hearing, thereby violating both Florida anti-discrimination law and federal due process rights.

121. Defendants' conduct under color of state law proximately caused Plaintiff to be deprived of clearly established federally protected rights under the Fourteenth Amendment.

122. Plaintiff received no notice, hearing, or other opportunity to be heard — either before his promotion or before he requested reassignment to the available window workstation.

123. Plaintiff's deprivation of clearly established federally protected rights was the reasonably foreseeable consequence of Defendants' conduct and caused Plaintiff to suffer professional embarrassment and a visible diminishment of status observed by other employees, which undermined his professional credibility, damaged peer perception, and caused a loss of respect.

124. Plaintiff is seeking damages, including non-economic compensatory damages exceeding $1,000,000, legal fees (if applicable), and costs, pursuant to 42 U.S.C.

§ 1983 for the violation of his rights to procedural due process when he was intentionally and with malice provided no pre-deprivation notice or hearing.

**COUNT II. PETITION CLAUSE VIOLATION**
*Under 42 U.S.C. § 1983*

125.     Plaintiff hereby incorporates by reference paragraphs 1 through 8 and paragraphs 25 through 50, *supra,* as if fully stated herein.

126.     This claim is brought against Defendant Miami-Dade County and Defendant Christina Salinas-Cotter (collectively, "Defendants").

127.     Defendants' misuse of public position, in violation of Florida Statute § 112.313(6), secured a special privilege, benefit, or exemption for Defendants to interfere with Plaintiff's right to petition the government without fear, as protected under the First Amendment — without notice or hearing — in violation of the Due Process Clause of the Fourteenth Amendment.

128.     Defendants, acting under color of state law, misused their public positions to instill fear of punishment or reprisals, causing a chilling effect on Plaintiff's speech and depriving him of rights and privileges guaranteed by the Constitution.

129.     Defendants acted under color of state law by using their public positions to intimidate Plaintiff into silence or compliance through threats of negative consequences for exercising and enjoying his protected rights, without a hearing, thereby violating both the federal Petition Clause and federal due process rights.

130.   Defendants' conduct under color of state law proximately caused Plaintiff to be deprived of clearly established federally protected rights under the First and Fourteenth Amendments to the Constitution.

131.   Plaintiff received no notice, hearing, or other opportunity to be heard — either before he emailed his protected petition or before he received Defendants' intimidating response to that petition.

132.   Plaintiff's deprivation of clearly established federally protected rights was the reasonably foreseeable consequence of Defendants' conduct and caused Plaintiff to suffer emotional distress, anxiety, reputational harm, a chilling of his speech, fear of further retaliation, and strain within his marriage and home due to his wife's fear of retaliatory harm.

133.   Plaintiff is seeking damages, including non-economic compensatory damages exceeding $1,000,000, legal fees (if applicable), and costs, pursuant to 42 U.S.C. § 1983 for the violation of his rights to procedural due process when he was intentionally and with malice provided no pre-deprivation notice or hearing.

**COUNT III. RETALIATORY REASSIGNMENT**
*Under 42 U.S.C. § 1983*

134.   Plaintiff hereby incorporates by reference paragraphs 1 through 7, paragraph 9, and paragraphs 51 through 88, *supra*, as if fully stated herein.

135.   This claim is brought against Defendant Miami-Dade County and Defendant Nathan Kogon (collectively, "Defendants").

136. Defendants' misuse of public position, in violation of Florida Statute § 112.313(6), secured a special privilege, benefit, or exemption for Defendant Salinas-Cotter to adversely affect the terms, conditions, or privileges of Plaintiff's employment prohibited under Florida Statute § 112.3187 — without notice or hearing — in violation of the Due Process Clause of the Fourteenth Amendment.

137. Defendants, acting under color of state law, misused their public positions to position a co-worker for the purpose and intent of carrying out adverse personnel actions that deprived Plaintiff of rights and privileges guaranteed by the Constitution.

138. Defendants acted under color of state law by using their public positions to ensure that Defendant Salinas-Cotter could retaliate against Plaintiff for his protected disclosure of information about her misconduct, without providing any notice or hearing, thereby violating both the Florida Whistleblower Act and Plaintiff's federal due process rights.

139. Defendants' violation of clearly established federally protected rights aggravated and intensified the chilling effect on Plaintiff's wife as previously described in paragraphs 44 through 48, *supra*, a reasonable employee who may never engage in protected activities out of fear of reprisal by government actors.

140. Defendants' conduct under color of state law proximately caused Plaintiff to be deprived of clearly established federally protected rights under the Fourteenth Amendment.

141. Plaintiff received no notice, hearing, or other opportunity to be heard — either before he disclosed protected information or before he was placed under the direct supervision of Defendant Salinas-Cotter as her subordinate.

142. Plaintiff's deprivation of clearly established federally protected rights was the reasonably foreseeable consequence of Defendants' conduct and caused him to suffer emotional distress, anxiety, reputational harm, a chilling of his speech, fear of further retaliation, and strain within his marriage and home due to his wife's fear of retaliatory malfeasance.

143. Plaintiff is seeking damages, including non-economic compensatory damages exceeding $1,000,000, legal fees (if applicable), and costs, pursuant to 42 U.S.C. § 1983 for the violation of his rights to procedural due process when he was intentionally and with malice provided no pre-deprivation notice or hearing.

## COUNT IV. RETALIATORY HOSTILE ENVIRONMENT
### *Under 42 U.S.C. § 1983*

144. Plaintiff hereby incorporates by reference paragraphs 1 through 8, paragraphs 51 through 65, and paragraphs 89 through 115, *supra*, as if fully stated herein.

145. This claim is brought against Defendant Miami-Dade County and Defendant Christina Salinas-Cotter (collectively, "Defendants").

146. Defendants' misuse of public position, in violation of Florida Statute § 112.313(6), secured a special privilege, benefit, or exemption that enabled them to adversely affect the terms, conditions, and privileges of Plaintiff's employment in

violation of Florida Statute § 112.3187—without notice or hearing—in violation of the Due Process Clause of the Fourteenth Amendment.

147. Defendants, acting under color of state law, misused their public positions for the purpose and intent of carrying out adverse personnel actions that deprived Plaintiff of rights and privileges guaranteed by the Constitution.

148. Defendants acted under color of state law by using their public positions to establish a retaliatory hostile work environment and subject Plaintiff to repeated public humiliation, professional marginalization, and loss of autonomy because of his protected disclosure of information, without a hearing, thereby violating both the Florida Whistleblower Act and federal due process rights.

149. Defendants' violation of clearly established federally protected rights aggravated and intensified the chilling effect on Plaintiff's wife as previously described in paragraphs 44 through 48, *supra*, a reasonable employee who may never engage in protected activities out of fear of reprisal by government actors.

150. Defendants' conduct under color of state law proximately caused Plaintiff to be deprived of clearly established federally protected rights under the First and Fourteenth Amendments to the Constitution.

151. Plaintiff received no notice, hearing, or other opportunity to be heard—either before he became subordinate to Defendant Salinas-Cotter or before she diminished his professional standing.

152. Plaintiff's deprivation of clearly established federally protected rights was the reasonably foreseeable consequence of Defendants' conduct and caused him to suffer

emotional distress, anxiety, reputational harm, a chilling of his speech, fear of further retaliation, and strain within his marriage and home due to his wife's fear of retaliatory malfeasance.

153.   Plaintiff is seeking damages, including non-economic compensatory damages exceeding $1,000,000, legal fees (if applicable), and costs, pursuant to 42 U.S.C. § 1983 for the violation of his rights to procedural due process when he was intentionally and with malice provided no pre-deprivation notice or hearing.

## X.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

**A. DECLARE** that Defendants' acts and omissions, as described herein, violate 42 U.S.C. § 1983; the First and Fourteenth Amendments to the United States Constitution; Florida's Unlawful Employment Practices Act, § 760.10, Fla. Stat.; and the Florida Whistleblower Act, § 112.3187, Fla. Stat.

**B. AWARD** Plaintiff compensatory damages for all injuries suffered, including emotional distress, anxiety, reputational harm, professional embarrassment, loss of status, and all other non-economic damages exceeding $4,000,000.00.

**C. AWARD** Plaintiff punitive damages against Defendants Christina Salinas-Cotter and Nathan Kogon, in their individual capacities, for their malicious, intentional, and willful deprivation of Plaintiff's federally and state-protected rights.

**D. ISSUE A PERMANENT INJUNCTION** ordering Defendants, their agents, employees, successors, and all persons acting in concert with them, to:

1. Immediately cease and desist from engaging in any unlawful, discriminatory, or retaliatory employment practices that violate Plaintiff's constitutional and statutory rights;

2. Implement written policies and procedures ensuring fair and non-discriminatory application of employment terms, conditions, and privileges, including but not limited to workstation assignments and reporting structures;

3. Provide mandatory training to all supervisory and managerial personnel concerning civil rights compliance, non-retaliation requirements under the Florida Whistleblower Act, and constitutional due process and equal protection obligations.

E. **AWARD** Plaintiff reasonable attorneys' fees (if applicable), costs, and expenses incurred in the prosecution of this action, pursuant to 42 U.S.C. § 1988 and all other applicable laws.

F. **GRANT** such other and further relief as this Court deems just, equitable, and proper.

Dated: December 01, 2025                                    Respectfully submitted,

DAVID ARNOLD GRAY
3450 NW 213th Street
Miami Gardens, FL 33056

By: _____

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of December 2025, I personally filed the foregoing with the Clerk of the Court. I also certify that the summons and foregoing complaint is being served on this day on defendants identified on the Service List below through the Miami-Dade County Sheriff's Court Services Section.

By: /s/ David Arnold Gray
David Arnold Gray

## SERVICE LIST

Miami-Dade County
Attn: **Clerk of the County Commission**
Stephen P. Clark Center
111 NW 1st Street, Suite 17-202
Miami, FL 33128
Tel: (305) 375-5126
Email: clerk.board@miamidade.gov

Housing and Community Development
Attn: **Nathan Kogon**
Overtown Transit Village
701 NW 1st Court, Floor 16
Miami, FL 33128
Tel: (786) 469-4120
Email: nathan.kogon@miamidade.gov

Housing and Community Development
Attn: **Christina Salinas-Cotter**
Overtown Transit Village
701 NW 1st Court, Floor 16
Miami, FL 33128
Tel: (786) 469-4246
Email: christina.Salinas@miamidade.gov

**Pro Se Plaintiff**
Served via CM/ECF

# EXHIBIT A

 Outlook

---

## RE: Request for Cubicle Space Adjustment

---

**From** Salinas-Cotter, Christina (HCD) <Christina.Salinas@miamidade.gov>

**Date** Mon 2/24/2025 6:19 PM

**To**   Gray, David (HCD) <David.Gray@miamidade.gov>

**Cc**   Brown, Clarence D. (HCD) <Clarence.Brown@miamidade.gov>; Bruno, Edwin (HCD) <Edwin.Bruno@miamidade.gov>; Ballina, Alex (HCD) <Alex.Ballina@miamidade.gov>

📎 1 attachment (751 KB)

HCD - Rollout of Our Pre-Hire Checklist & Guide!!;

Good Afternoon Mr. Gray,

I am in receipt of your email regarding your concerns about office space allocation. I take these matters seriously and would like to provide clarification on the events you have described, as well as address the false allegations made against me.

First and foremost, I must address my right, under the same County regulations you cited, to a workplace free from unlawful harassment. Your false claims and allegations constitute harassment, and I will take appropriate steps to report this behavior to the relevant authorities under all applicable laws and policies.

Regarding your request for a larger cubicle for yourself, our verbal conversation took place in the hallway, where you inquired about moving into an empty cubicle that you had pointed out. I informed you at that time that the specific cubicle you pointed to had already been earmarked for another employee. That was the end of our conversation, and you never said another word to me about identifying an alternative space for you. At no point did I issue a denial of your request, and you have no evidence to support your false allegations.

Additionally, on January 27, 2025, I disseminated a pre-hire checklist (email attached) to the department outlining the proper procedures for requesting office space and other onboarding needs, which our HR team had been following and guiding employees by for several months prior to the dissemination of this checklist. At no point did you submit a formal written request for either your own office space or the office space for the interns in accordance with these procedures. All office space allocations have been determined based on adherence to these instructions and operational needs.

With respect to the interns, your initial inquiry was met with my explanation that the interns were not part of the Mayor's Internship Program and that we were awaiting further guidance from central HR. When you later approached me again in front of my office, and it was confirmed that the interns would be starting soon, I informed you that we would be utilizing a space on the 16th floor, which is currently being reconfigured by a contractor. I clearly stated that these spaces would not be available until the reconfiguration was completed. Your response at that time was that it was not an issue, and you would work on finding them a place to sit in the meantime. You then asked about obtaining laptops for the interns, at which point I advised you to submit an urgent Remedy IT ticket and to copy Sandy Rodriguez to ensure expedited processing. I also informed you that Sandy was available to assist if needed.

Given these facts, your assertions that I denied you office space in violation of County policies are entirely false. The application of these policies has been consistent, and all office space decisions have been based on operational needs and adherence to established procedures.

Furthermore, as an employee at your level, if you felt that you were not treated fairly, the appropriate protocol would have been to raise these concerns with your immediate supervisor, who then would have escalated them to me if necessary. Since your supervisor, copied herein, has never communicated any office space concerns to me, I can only presume that these concerns were not raised to your supervisor in accordance with County policy.

That said, I am happy to consider any formal requests for office space once they are submitted in accordance with the instructions and process outlined in the pre-hire checklist.

While I find your accusations to be unwarranted and harassing, I remain committed to open communication and collaboration. If you would like to discuss this matter further in a professional and constructive manner, I am happy to schedule a meeting with our HR Manager, Ms. Bruno, at a mutually convenient time.

Regards,

**Christina Salinas Cotter**
Assistant Director. Program Excellence
Miami-Dade Housing and Community Development
O – 786-469-4246
C - 786-602-3800

**From:** Gray, David (HCD) <David.Gray@miamidade.gov>
**Sent:** Thursday, February 20, 2025 2:36 PM
**To:** Salinas-Cotter, Christina (HCD) <Christina.Salinas@miamidade.gov>
**Cc:** Brown, Clarence D. (HCD) <Clarence.Brown@miamidade.gov>; Bruno, Edwin (HCD) <Edwin.Bruno@miamidade.gov>
**Subject:** Request for Cubicle Space Adjustment

Good afternoon Ms. Salinas-Cotter,

**Issue**

The issue is whether Ms. Salinas-Cotter's denial of Mr. Gray's requests for a larger cubicle, both for himself and for the internship program, constitutes a violation of the County's fair employment practices under **Implementing Order No. 07-45** and **Florida Statute 112.3187**.

**Rule**

Under **Implementing Order No. 07-45**, Miami-Dade County is required to ensure fair employment practices, prohibiting workplace discrimination and ensuring equitable treatment in employment-related decisions. **Florida Statute 112.3187**, also known as the Whistleblower Act, protects employees from retaliatory actions when they disclose potential violations of the law, rules, or regulations.

**Application**

On **June 1, 2024**, Mr. Gray was promoted to a **G8 level position** within the **Department of Housing and Community Development (DHCD)**. In line with DHCD's established internal promotion practices, he requested a larger cubicle, which was **denied by Ms. Salinas-Cotter** on or before **August 1, 2024**, citing a lack of available cubicles. However, between **August 15, 2024, and February 20, 2025**, Ms.

Salinas-Cotter assigned **four other employees** who were promoted to G-level positions to larger cubicles, demonstrating inconsistent application of this policy.

Furthermore, on or before **February 10, 2025**, Mr. Gray requested **two additional cubicle spaces** for the County's internship program, which he facilitated in accordance with DHCD's onboarding practices. This request was again **denied by Ms. Salinas-Cotter**, who stated that "this is not the real internship program offered by the Mayor." As a result, since **February 11, 2025**, Mr. Gray and **two interns have been forced to work in a single cubicle designed for one person**, creating substandard working conditions.

Ms. Salinas-Cotter's actions appear to reflect **disparate treatment**, as similarly situated employees were granted larger cubicle spaces following their promotions, whereas Mr. Gray was denied this accommodation without a legitimate justification. Additionally, the rejection of his request for cubicle space for interns may suggest an effort to obstruct his ability to carry out internship-related duties, which could constitute retaliation or an unfair employment practice under **Implementing Order No. 07-45** and **Florida Statute 112.3187**.

### Conclusion

Based on the evidence, Ms. Salinas-Cotter's **denial of cubicle space to Mr. Gray while granting it to other G-level employees**, along with her **refusal to allocate space for interns despite DHCD's onboarding practices**, may constitute a violation of fair employment practices and potential retaliation under **Florida Statute 112.3187**. If this **issue is not remedied within seven (7) days**, Mr. Gray may have grounds to file a formal complaint to address these inequitable employment actions.

*David Gray*

*Business Intelligence Architect*

Dept. of Housing & Community Development

701 NW 1st Court, 16th Floor, Miami, FL 33136

☎ (786) 469-4127 or ☎ (786) 723-9390

The greatest value of business intelligence is when it

forces us to notice things we never expected to see.



*"Delivering Excellence Every Day"*

*Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning*

*public records. E-mail messages are covered under such laws and thus subject to disclosure.*

# EXHIBIT B

 Outlook

**Business Architect Hire**

From Murphy, Felicia (PHCD) <Felicia.Murphy@miamidade.gov>
Date Thu 10/3/2024 4:47 PM
To    Gray, David (PHCD) <David.Gray@miamidade.gov>; Salgado, Rafaela (HR) <Rafaela.Salgado@miamidade.gov>
Cc    Marlow, Simona (PHCD) <Simona.Marlow@miamidade.gov>; Taylor, Coralee (PHCD) <Coralee.Taylor@miamidade.gov>

📎 1 attachment (31 KB)
Position Approval Request Form.docx;

Hello David, please be advised that you have been officially hired into the Business Architect position with an effective date of June 24, 2024. See below:

| | | | |
|---|---|---|---|
| Employee ID | 00313877 | Employee Status Date | 06/24/2024 |
| Employee Name | David Gray | Pay Anniversary Date | 04/29/2024 |
| BU Description | Public Housing & Community Dev | Next Leave Anniversary Date | 01/06/2025 |
| Position Title | Business Architect (001749) | Date of Hire | 05/18/2015 |
| Supervisor Level | 12 | Date of Rehire | 05/18/2015 |
| HR Status | Active | Regular/Temporary | Regular |
| Payroll Status | Active | Full/Part Time | Full-Time |
| Reports To | 00007559 Deputy Director, PHCD (003598) - 00217246 Clarence Brown | Longevity Years | 5 |
| Executive Benefits Code | | Pay Period Number (Unique to the Employee) | 19 |
| Annual Base Salary | $100,164.22 | Annual Adjusted Salary | $101,984.22 |
| Union Code | L    Non Bargaining | Employee Class | AA   Permanent |
| Grade (Salary Plan) | G08 | Pay Step | 0 |
| Uniform Allowance | $0.00 | Tool Allowance | $0.00 |

| Rate Code | Description | Compensation Rate |
|---|---|---|
| 1 PRMPAY | Premium Pay | 70.00 |
| 2 MDBKLY | Base Biweekly Salary | 3,852.47 |

Ms. Coralee, please complete and route the attached Backfill Request form to start the hiring process to replace David. If you have any questions regarding the form, please let me know.

Thank you both and Congratulations David!

Felicia L. Murphy, HR Manager
Public Housing and Community Development
Human Resources Division
Phone: 786-469-4160
Fax: 786-469-4151
fel@miamidade.gov
Connect With Us on Twitter | Facebook | Instagram

*Please consider the environment before printing this email.*

Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure.

**From:** Murphy, Felicia (PHCD)
**Sent:** Friday, September 27, 2024 6:43 PM



## POSITION QUESTIONNAIRE

| PART I - TO BE COMPLETED BY EMPLOYEE |
| --- |

| Employee Name / Employee ID#<br>VACANT | Present Job Title / Occ. Code |
| --- | --- |
| Department / Division / Locator<br>080 / 08 / 361 | Present Annual Salary |
| Name of Immediate Supervisor / Job Title | Requested Title / Requested Salary<br>Business Architect / 1749<br>Grade 8<br>$97,246.75 - $160,531.37 |

**General Responsibilities**: Indicate The **General** Responsibilities And Board Objectives Of The Work You And The Organizational Units Reporting To You Perform.

The Miami-Dade Public Housing and Community Development Department (PHCD) manages more than 8,000 public housing apartments and provides financial help through the federal Section 8 program to more than 18,000 families. Our support services include assisted living facilities for the elderly and self-sufficiency programs for our tenants. We rely on federal and state grant programs to fund our programs. We work closely with the U.S. Department of Housing and Urban Development's (HUD) on our public housing and with the State of Florida, the development of affordable housing.

The Business Architect (Enterprise and Business Solutions) works collaboratively with business and technical subject-matter experts throughout the Miami-Dade County Information Technology Department (ITD), Public Housing and Community Development Department (PHCD), U.S. Department of Housing and Urban Development (HUD), and other agencies to guide the development of information technology blueprints, which represent segments within the County and HUD. The Business Architect will streamline common solutions across the Department's strategic lines business functions and core IT services. The core functional activities will enable accelerated IT modernization and accurate data reporting that links IT initiatives with the Department's strategic objectives and core business functions. PHCD is committed to transparency, accountability, and compliance to federal regulations.

The Business Architect is a senior level position within the organization with an in-depth understanding of internal business capabilities, processes, and strategic needs. The incumbent will be the point person for the Department and embedded within business units to understand all aspects of the organization for the purpose of defining technology objectives that will change the way the organization does business today. The position will be forward-thinking and work closely with the ITD subject matter experts to define solutions that support the redesigned or improved business processes using current and future technologies. The Business Architect will be held accountable by the Deputy Director and Department Director.

PHCD is funded by the U.S. HUD and is required to provide reports that provide information regarding our operations, programs, and services as well as informing HUD, the families served, and members of the public of our mission, goals and objectives for serving the needs of low-income families. In addition, PHCD provides other supporting documents that contain policies and procedures related to the occupancy of its subsidized rental housing programs. Given the significant role the PHCD plays in our community, addressing the needs of those that are considered at high risk given their incomes and living environments, and the critical reports that need to be transmitted to HUD, this classification is "key" to developing a truly consistent, transparent, and standardized operation for the PHCD.

| Description Of Duties: List The Duties You Perform - Indicate Approximate Percentage | Approximate |
| --- | --- |

1

| Of Your Time Devoted To Each of Them. Begin Each Statement With An Action Verb (Plans, Supervises, Analyzes, Etc.) | Percentage Of Time (Should Total 100%) |
|---|---|
| **Planning, Strategy, Data, and Reporting**<br><br>Reviews, analyzes, and evaluates ideas, projects, and opportunities to develop new business models. Plans and executes innovation and emerging business projects to take new ideas/opportunities from the ideation phase to the incubation phase of the PHCD processes. Participates in the planning and execution of projects that move ideas from ideation to incubation and proto-typing. Collaborates across business segments to both find opportunities for and showcase ideas in business innovation. Works with technical and business teams to evaluate new and emerging technologies, vendors, and business models. Creates business architecture models demonstrating how services, operations, and systems interoperate within the organization. Conducts analysis to determine best path for solving business problems/opportunities that may include process improvement, systems enhancement, user training, and/or software procurement. Directs technology professionals in the design and development of technology solutions and/or business applications that meet target business needs. Ensures solutions developed across organization are aligned to enterprise architecture standards and principles, leverage common solutions and services, and meet operational, time, and financial milestones and deliverables.<br><br>• Works with senior business executives to design transformational business and strategic plans for the Department's enterprises and works with Information Technology leadership to develop a strategically aligned technology roadmap with metrics and data for executive reporting.<br>• Builds a strategic business framework with high-level objectives, strategies, goals, and metrics that align to guide the operation and management of the department; align IT initiatives with the organization's Business and Strategic Plans; and work with ITD to develop solutions that address issues that hinder achievement of objectives.<br>• Develops a business intelligence environment that provides visibility and ongoing evaluation of how successfully the department is achieving objectives and goals using technology, refines the department's business plan, budget and plans for technology initiatives on an annual basis.<br>• Evaluates and presents information that will facilitate effective and timely decision-making through written, oral, and digital communication materials that effectively summarize findings with recommendations. | 25% |
| **Digital Transformation Related to Strategic Goals, Objectives, and Supporting Initiatives**<br><br>Reviews project documentation regularly to ensure it meets standards and fulfills the process strategy of organization. Provides overall direction, guidance, and definition of business architecture to effectively support business strategy. Applies and utilizes business modeling methods to ensure results oriented deliverables in a way that can be recreated and used as a corporate knowledge resource available to project level initiatives and executive decision making. Acts as a subject matter expert in the development of business architecture frame work development. Tool suite selection and design and methodology development. Leads senior management through the development of a business architecture plan for the line of business. Evaluates and presents information that will facilitate effective findings with recommendations. Conducts review and analysis of operational needs and goals for the development and implementation of business architecture applications.<br><br>• Manages efforts that result in the digital transformation of the Enterprise Architecture related to customer experience and communications through the County's service and information channels and change management from current to future state.<br>• Provides an intuitive one-stop solution to quickly and reliably deliver information for public access.<br>• Leverages web services to conduct business reliably and securely with customers | 25% |

2

| | |
|---|---|
| and stakeholders.<br>• Provides technologies enabling PHCD employees to work collaboratively and share knowledge.<br>• Plans and executes innovation and emerging business projects to take new ideas/opportunities from the ideation phase to prototyping and implementation.<br>• Works closely with the Data Architects, Data Modelers, Business, and IT stakeholders to define and design an accurate model of services and government information.<br>• Enterprise focus in order to increase data quality, data understanding, and data sharing across the Department. This Initiative and the services provided will allow PHCD to accurately define, integrate, utilize, and retrieve data from applications across the Department and external data sources and deliver it in a timely manner to support critical business decision making. Enterprise data governance and standards will increase data management efficiency and reduce duplicate and redundant data. Data virtualization will effectively mask the complexity related to physical location and structure of data in the various databases and data stores. Business users will be better able to identify, understand, and access the data they need for their reporting and analysis needs. The Business Architect will implement data standards and management strategies. | |
| **Information Systems, End-to-End Delivery, and Mapping**<br><br>Partners with IT architecture team in developing an IT framework that aligns with the business plan. Conducts analysis to determine best path for solving business problems/opportunities through process improvement, systems enhancement, user training, and/or software procurement. Functions as a liaison to business and IT partners in order to gain a broad understanding of industry trends and innovations, and their impact on technology. In conjunction with business partners, initiates IT project requests, perform/lead initial analysis of the request and participates in the initial assessment and estimation of the effort. Works with the business to integrate capability planning and roadmaps into their strategic planning and project implementations. Collaborates with business leaders, providing input and capability information as inputs to develop business case for initiatives. Identifies planning and initiative needs and ensures proposed initiatives fit with business capability roadmaps.<br><br>• Serves as the Department's liaison with ITD with all information systems and technology for Department.<br>• Ensures service tickets are prioritized and addressed timely for operational efficiency.<br>• Serves as departmental liaison for all outsources services that impact digital footprint of the department.<br>• Participates in the planning and execution of projects and establishes productive relations through the organization to ensure departmental acceptance of new business processes. | 25% |
| Leads the effort to work with business leaders to identify business capability needs and prioritization. Leads the effort to translate business strategies and objectives into capabilities. Streamlines PHCD processes. Leads the effort to provide traceability of business strategy to capabilities and processes. Leads the effort to identify and document capability and initiatives needs and strategic prioritization into business architecture deliverables (roadmaps, etc.).<br><br>Coordinates partnerships that result in shared funding or projects. Identifies technology projects to effectuate infrastructure needs for the department. Creates business architecture models demonstrating how services, operations, and systems flow within the organization. Ensures solution development across the enterprise are aligned to enterprise architecture standards and principles, leverages common solutions and services, and meets financial targets (cost and benefits).<br><br>Reviews project documentation regularly to ensure it fulfills the business and process | 10% |

3

| | |
|---|---|
| strategy of the organization. Applies and utilizes business modeling methods to ensure results-oriented deliverables in a way that can be recreated and used as a knowledge resource available to project level initiatives and executive decision-making. | |
| Provides architectural oversight of projects. Ensures requirements are in alignment with business strategies and business architecture roadmap/framework. Takes ownership and accountabilities and a 'hands-on' approach to define and deliver a program of work to enhance the efficiency and effectiveness of a core business process. Decomposes company strategy into tactical approaches for achieving these goals and for providing traceability through the organization. Maps the strategic goals to metrics that provides ongoing evaluation of how successfully the organization is achieving its goals. Defines the set of strategic, core, and support processes that transcend functional and organizational boundaries.<br><br>Collaborates with business leaders, providing input and capability information as inputs to develop business case for initiatives. Serves as the Department Liaison with other County Departments and local agencies in support of information technology collaboration projects. | 15% |

**What Are The Three Most Important Responsibilities Of Your Job?**

1. Enhance the quality, availability, and delivery of PHCD information to residents, employees, business partners, and government. Promote an enterprise approach to information technology that will foster innovation and collaboration. Achieve excellence in IT management practices. Transform PHCD to a culture of operational excellence that can achieve current and future Departmental goals
2. Evaluate, recommend, and implement technology and business process solutions and best practices, across the department, which will realize departmental efficiency goals, contribute towards fulfilling departmental goals and objectives.
3. Streamlines PHCD processes. Collaborates across business segments to find opportunities and showcase ideas in business innovation. Works with technical business teams to evaluate new and emerging technologies and business models. Conducts analysis to determine best path for solving business problem/opportunities and data and reporting.

| PART 1 (Cont'd) |
|---|
| **Impact And Accountability:** Please Indicate The Dollar Limitations On Your Authority To: |
| **(1) Incur Expenses**<br>Limited to Budget |
| **(2) Purchase Materials And Supplies**<br>Limited only by available budget. |
| **Please Indicate The Size Of Annual Expenses Budget For Which You Are Responsible:**<br>Limited to Budget. |
| **In What Way Can Your Own Performance Of The Duties And Responsibilities Of Your Position Increase The Level And Effectiveness Of County Services, Reduce Costs, And/Or Prevent Losses?**<br><br>This position duties are directly tied to the level and effectiveness of increasing data and reporting improvement and thus improving departmental programs, county services, and reduce costs and lost prevention. |
| **What Kind Of Errors Can Occur In Your Position, What Are The Probable Results Of Such Errors, And What Supervisory And Procedural Safeguards Are Available To Prevent Or Diminish Such Errors?**<br><br>Lack of effective implantation of a technology solution or lack of fully understanding business process could expose Miami-Dade County to financial loss or legal liability as well as potentially contribute to data breach and loss of funding. |

**Relationships:** Indicate People Inside Or Outside Of The County Organization You Contact Regularly As Part Of Your Job - Exclude Your Supervisor And Employees You May Supervise.

| Regular Dealings With | Subject Matter | Frequency |
|---|---|---|
| Office of the Mayor | Various initiatives and projects | As needed |

4

| Board of County Commissioners | Various directives and Resolutions | As needed |
|---|---|---|
| Department Director/Deputy Director | Various directives and initiatives | Daily, Weekly |
| ITD | Various proposed technology solutions/enterprise architecture | Daily |
| Senior Management (Asst. Director/Division Directors) | Various business processes and recommendations | Daily, Weekly |
| Other County Departments | Various changes and upgrades, issues, operational procedures, compliance to mitigate errors and liabilities, and resolutions | Daily |
| CFO | Budget | Daily, Weekly, Monthly |
| US HUD | Various changes and upgrades, compliance and audits | As needed |
| Various Housing Authorities | Various changes and upgrades | As needed |
| Other Government Officials | Various changes and upgrades | As needed |
| Vendors/Construction Industries | Various changes and upgrades | As needed |

**Supervisory Responsibility:** List The Departments, Units, Or Job Titles You Supervise And The Number of Employees Supervised.

| Department, Unit Or Title | Number of Employees |
|---|---|
| PHCD Services Coordinator | 1 |

**Previous positions deleted/held – 1 Personnel Specialist 3, 2 Personnel Technicians, 1 Administrative Officer 2 (Training Specialist and Affirmative Action Officer), 1 Administrative Secretary, 2 PHCD Technicians, 2 HRIS Specialists**

**Indicate The Personnel Actions (Hire, suspend, Promote, Discipline, Etc.) You Have Authority To Take For These Jobs.**

| Department, Unit Or Title | Personnel Action Authority |
|---|---|
| Data and Reporting Unit | Hire, suspend, promote, and discipline |
| | |

**Comments:** List Any Additional Information You Feel Would Be Helpful In Understanding And Evaluating Your Job. Use Extra Sheets, If Necessary, But Be Sure To Write Your Name On The Sheets And Staple Them To This Questionnaire.

The Department's primary purpose is to provide housing, a basic need for low-income residents in Miami-Dade County. As such, PHCD services provide the strongest safety nets ensuring a decent quality of life for its residents, providing such services as a county department, funded and regulated by the federal government, which presents exceptional challenges.

**Do Not Complete Part II On The Back Of This Form. Please Sign This Form And Forward It To Your Department For Completion.**

Signature _____     Date _____

5